IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SIGMA MARBLE & GRANITE—HOUSTON, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-09-3942 |
| AMERISURE MUTUAL INSURANCE COMPANY, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION

Pending before the court[1] are cross motions for summary judgment on duty to defend filed by Sigma Marble & Granite—Houston, Inc., ("Sigma Marble") (Docket Entry No. 11) and Amerisure Mutual Insurance Company ("Amerisure") (Docket Entry No. 12).  The court has considered the motions, the responses, all other relevant filings, and the applicable law.  For the reasons expressed below, the court **GRANTS** Sigma Marble's motion and **DENIES** Amerisure's motion.

## I.  Case Background

Sigma Marble, a ceramic tile and stone merchant, filed this insurance action for breach of contract and deceptive trade practices against its commercial general liability ("CGL") insurer.

## A.  Underlying Facts

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 9.

Sigma Marble purchased a series of CGL policies that were continuously renewed.[2]   The per-occurrence limit of liability was $1,000,000 on each policy, and the general aggregate limit was $2,000,000.[3]   The policies contained a duty-to-defend provision that extended until the limit of insurance was exhausted by the payment of judgments or settlements under the applicable coverage section.[4]

The policies covered property damage that was caused by an occurrence in the coverage territory and during the policy period.[5] The policy definition of "property damage" was:

a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[6]

"Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful

---

[2]      Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11, Aff. of Simon Kanaan, p. 1; Ex. 1, 2008 CGL Policy; Ex. 2, Common Policy Declarations Pages for 2006 & 2007 Policies.

[3]      See Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. A, Amerisure 00075, 2007 CGL Coverage Part Declarations Page.

[4]      See id. at Amerisure 00158, CGL Coverage Form, p. 1.

[5]      See id.

[6]      Id. at Amerisure 00171-72, CGL Coverage Form, pp. 14-15.

conditions."[7]

The policy contained numerous exclusions, including ones for

damage to the insured's product and work as follows:

> k.   Damage To Your Product
>      "Property damage" to "your product" arising out of
>      it or any part of it.
>
> l.   Damage To Your Work
>      "Property damage" to "your work" arising out of it
>      or any part of it and included in the "products-
>      completed operations hazard."[8]

The definition of "your product" was:

> (1)  Any goods or products, other than real property,
>      manufactured,  sold,  handled,  distributed  or
>      disposed of by:
>      (a)  You;
>      (b)  Others trading under your name; or
>      (c)  A person or organization whose business or
>           assets you have
>           acquired; and
>
> (2)  Containers (other than vehicles), materials, parts
>      or equipment furnished in connection with such
>      goods or products.[9]

"Your work" was defined as "[w]ork or operations performed by you

or on your behalf" and "[m]aterials, parts or equipment furnished

in connection with such work or operations."[10]  Both "your product"

and  "your  work"  included  warranties  of  "fitness,  quality,

durability, performance or use" and "[t]he providing or failure to

---

[7]      Id. at Amerisure 00171, CGL Coverage Form, p. 14.

[8]      Id. at Amerisure 00162, CGL Coverage Form, p. 5.

[9]      Id. at Amerisure 00172, CGL Coverage Form, p. 15.

[10]     Id.

provide warnings or instructions."[11]   The "products-completed operations hazard" referenced in Exclusion l included all "bodily injury" and "property damage" occurring away from the insured's premises and arising out of the insured's product or work except:

> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
> > (a) When all of the work called for in your contract has been completed.
> >
> > (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> >
> > (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.[12]

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.[13]

In 2005, Transformation 5701, L.P., ("Transformation") hired Constructors & Associates, Inc., ("Constructors") as the general contractor on a major renovation of a Houston hotel.[14]  In part, the

---

[11]     _Id._

[12]     _Id._ at Amerisure 00171, CGL Coverage Form, p. 14.

[13]     _Id._

[14]     _See_ Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. B, Sigma000002, Transformation's Am. Statement of Arbitration Claim, p. 2.  The parties agree that the amended statement of claim is the relevant pleading for

renovation entailed tile and stone work in the guest bathrooms, including floor and wall tile or stone, marble thresholds, and "granite tops with detailed and thickened edges."[15]   Constructors engaged Sigma Marble to perform the tile and stone work in all areas of the hotel, including the guest bathroom showers and vanities.[16]

Nearly a year into the hotel renovation and after numerous change orders approved by the owner, Transformation and Constructors revised the contract, raising the budget and extending the timeline for completion of the entire project.[17]   Even with the modifications, the renovation failed to meet the projected budget or deadline.[18]

**B.   Arbitration**

After completion of the project, Transformation filed an arbitration claim against Constructors seeking just over $12,000,000 and alleging, inter alia, that Constructors made

---

determining the duty to defend. See Amerisure's Resp. to Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 15, p. 1; Sigma Marble's Reply to Amerisure's Resp. to Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 17, p. 1.

[15]   Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. B, Sigma000035, Standard Form of Agreement Between Owner & Contractor, p. 7.

[16]   Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11, Aff. of Simon Kanaan, pp. 1-2; see also Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. C, Sigma000112, Constructors' Statement of Claim Against Third-Party Respondents, p. 2 (stating that Sigma Marble "agreed to furnish and install the tile and related work").

[17]   See Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. B, Sigma000003, Transformation's Am. Statement of Arbitration Claim, p. 3.

[18]   See id. at Sigma000006-07, Transformation's Am. Statement of Arbitration Claim, pp. 6-7.

construction errors that increased construction and operation costs and delayed completion and that Constructors falsified reports to induce Transformation to continue making payments.[19] Transformation claimed more than $4,000,000 in "misrepresentation and negligence driven delay" damages associated with its inability to open the hotel for business as scheduled, including interest payments, staff salaries, reputation harm, event cancellations, and rent, food, and beverage receipts.[20]   Of particular note to this suit is Transformation's allegations of cost increases and completion delays caused by "unilaterally" relocating vanities and showers in more than twenty-four suites due to "incorrect installations that compromised the bathroom design and created expensive completion costs."[21]

In April 2008, Constructors filed a third-party demand for arbitration against Sigma Marble and several other subcontractors.[22] Constructors characterized Transformation's statement of claim as seeking damages for "alleged defects and deficiencies in the work for the Project, alleged damages for work allegedly paid for by

---

[19]    See Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. B, Sigma000001-16, Transformation's Am. Statement of Arbitration Claim, pp. 1-16 & Sigma000104, Construction Errors.

[20]    Id. at Ex. B, Sigma000012-Sigma000013, Transformation's Am. Statement of Arbitration Claim, pp. 12-13.

[21]    Id. at Sigma000104, Construction Errors.

[22]    Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. C, Sigma000106, Demand for Arbitration to Third-Party Respondents, p. 1 & Sigma000108-09, Ex. A, List of Third-Party Respondents, pp. 1-2.

Transformation but not performed, alleged damages concerning certain additional costs in the materials for the work, and alleged damages for delays in the performance of the work."[23]   The third-party statement of claim alleged that, based on the indemnity provisions of the subcontract agreements, responsibility for claims arising out of or based on the work performed by the third parties or for untimeliness of performance belonged to the respective third party who performed the work.[24]   It further alleged that the subcontractors would be liable if they had not performed the work in accordance with the requirements of the subcontracts or the project schedule.[25]

Sigma Marble submitted Constructors' third-party arbitration claim to Amerisure, and, on May 19, 2008, Amerisure issued a reservation-of-rights letter indicating that it would not assume Sigma Marble's defense but would "complet[e] a coverage analysis to determine if one [wa]s owed."[26]   The letter "dr[e]w . . . attention"

---

[23]   Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. C, Sigma000113, Constructors' Statement of Claim Against Third-Party Respondents, p. 3.

[24]   Id. at Ex. C, Sigma000114, Constructors' Statement of Claim Against Third-Party Respondents, p. 4.

[25]   Id. at Ex. C, Sigma000114-15, Constructors' Statement of Claim Against Third-Party Respondents, pp. 4-5.

[26]   See Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11, Aff. of Simon Kanaan, Ex. 5, Letter from Shira Jefferson to Sigma Marble dated May 19, 2008, p. 2; Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11, Aff. of Anthony Maluski, Ex. 1, Letter from Anthony Maluski to Pam Butler dated Apr. 11, 2008 & Ex. 2, Letter from Anthony Maluski to Pam Butler dated Apr. 17, 2008.

7

to several coverage, exclusion, endorsement, and definition provisions of the policy and stated:

Based upon the allegations in the arbitration, we wish to expressly inform you of the following reasons why coverage might be precluded under the above referenced policy:

1.) The petition seeks damages for defect and deficiencies for the work performed at the project. Endorsement CG 7045 modified the policy to include limited coverage under Exclusion l. Your Work. and Exclusion m. Damage to Impaired Property or Property Not Physically Injured.

2.) The petition seeks damages for additional cost in materials on a guaranteed Contract. The damages as described in the loss do not meet the definition of an "occurrence" as defined under Section V-Definitions.

3.) The petition seeks damages for delays in the performance of the work. These allegations do not meet the definition of "Bodily Injury or Property Damage" or an "occurrence" as defined under Section V-Definitions[.]

4.) Sigma Marble and Granite contracted to perform work on the project. No specific date of loss has been determined. In accordance with the insuring agreement, property damage must occur within the policy period. See Insuring Agreement b(2).

5.) In addition the petition filed by Transformation has made allegations that false statements were knowingly made for application of funds in change orders, accounting records, and progress of the job. The allegations of deception do not meet the definition of an occurrence. Also fraud/misrepresentation is excluded from coverage under Exclusion (a)

Expected and Intended Injury.[27]

After completing its investigation, Amerisure denied defense and coverage in a written determination dated October 16, 2008.[28] The letter opined, "None of the enumerated construction errors appear to involve the tile work performed by Sigma [Marble]."[29] Amerisure identified a few policy provisions on which it based the denial of coverage and explained its decision.[30] Specifically, Amerisure did not interpret the arbitration claim as meeting the policy terms for an "occurrence" or "property damage," as triggering either the rework and repair or the additional insured endorsement, or as alleging damages that arose out of Sigma Marble's work.[31]

The arbitration panel conducted the arbitration, in which Transformation sought over $12,000,000 in damages, and issued its award.[32] The mid-April 2009 decision awarded Constructors approximately $74,000 (after deductions for amounts paid,

---

[27]    Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11, Aff. of Simon Kanaan, Ex. 5, Letter from Shira Jefferson to Sigma Marble dated May 19, 2008, pp. 2-8.

[28]    See Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11, Aff. of Simon Kanaan, Ex. 6, Letter from Carl R. Zachry to Sigma Marble dated Oct. 16, 2008.

[29]    Id. at p. 2.

[30]    See id. at pp. 3-5.

[31]    See id. at pp. 4-5.

[32]    See Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11, Aff. of Anthony Maluski, Ex. 3, Award of Arbitrators.

liquidated delay damages, etc.) and divided the expense of arbitration between the two parties.[33]   The arbitrators ordered Transformation and Constructors to reimburse Sigma Marble a combined total of approximately $23,000.[34]   The award to Sigma Marble failed to cover the cost of its defense.[35]

## B.   **Procedural History**

Sigma Marble filed this action in state court on October 9, 2009, and served Amerisure on November 10, 2009.[36]   Amerisure filed a general denial to Sigma Marble's state court petition on December 6, 2009.[37]   Three days later, Amerisure timely removed the action to this court based on diversity jurisdiction.[38]   Taking into account credits and offsets awarded to Sigma Marble in the arbitration, Sigma Marble seeks $148,142.44 from Amerisure.[39]

The parties agreed to postpone discovery and submit competing motions for summary judgment on what they considered to be

---

[33]   Id. at p. 2.

[34]   Id.

[35]   Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11, Aff. of Simon Kanaan, p. 2; Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11, Aff. of Anthony Maluski, p. 2; id. at Ex. 3, Award of Arbitrators, p. 2.

[36]   See Amerisure's Notice of Removal, Docket Entry No. 1, Ex. D, Sigma Marble's Original Petition and Request for Disclosure ("Sigma Marble's Petition"); Amerisure's Removal Statement, Docket Entry No. 2, p. 1.

[37]   Amerisure's Notice of Removal, Docket Entry No. 1, Ex. E, Amerisure's Original Answer.

[38]   See Amerisure's Notice of Removal, Docket Entry No. 1; Amerisure's Removal Statement, Docket Entry No. 2, p. 1.

[39]   Amerisure's Notice of Removal, Docket Entry No. 1, Ex. D, Sigma Marble's Petition, p. 6.

threshold legal issues.[40]  At the scheduling conference, the court set a deadline for filing summary judgment motions.[41]  The court entered no other scheduling dates.[42]

Amerisure filed a motion for leave to amend its answer in order to add defenses and to conform with federal rules.[43]  The court granted the motion.[44]  The parties timely filed motions for summary judgment on the issue of duty to defend.[45]  The parties fully briefed the dispositive motions, and the court now considers them.

## II.  Applicable Legal Standards

Sigma Marble and Amerisure each seek summary judgment in its favor on the insurance duty to defend.[46]

### A.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

---

[40]    See Joint Disc. Plan/Case Management Plan, Docket Entry No. 7, pp. 2-3.

[41]    See Min. Entry Order, Docket Entry No. 8.

[42]    See id.

[43]    See Mot. for Leave to File First Am. Answer, Docket Entry No. 10.

[44]    Order dated June 8, 2010, Docket Entry No. 20.

[45]    See Sigma Marble's Mot. for Partial Summ. J., Docket Entry No. 11; Amerisure's Mot. for Summ. J., Docket Entry No. 12.

[46]    The insurer's duty to indemnify is not at issue in this case because the arbitrators did not find Sigma Marble liable for any damage in the underlying dispute.

Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).   The movant must inform the court of the basis for the summary judgment motion and must demonstrate the absence of genuine factual issues.   <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).

If the moving party meets its burden, the nonmoving party must demonstrate that genuine issues of material fact do exist to be resolved at trial.   <u>Celotex Corp.</u>, 477 U.S. at 324.   When both sides move for summary judgment, they are, in effect, agreeing that no facts are in dispute and that the court should decide the relevant claims as a matter of law.   <u>See</u> Fed. R. Civ. P. 56(c)

**B.   <u>Applicable Insurance Law</u>**

As this declaratory action is in federal court under diversity jurisdiction, state law governs substantive matters.   <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938).   Because Texas is the forum state in this matter, the court applies Texas' choice of law rules.   <u>Hyde v. Hoffmann-La Roche, Inc.</u>, 511 F.3d 506, 510 n.28 (5th Cir. 2007)(citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941), as holding that a federal district court sitting in diversity must apply the forum state's conflict of laws rules).   Any insurance policy payable to a "citizen or inhabitant" of Texas by an insurance company doing business in Texas is held to be governed by Texas law regardless of where the contract was executed

or to where the premiums are paid.  Tex. Ins. Code art. 21.42.  By relying on Texas law in their briefs, the parties have conceded that Texas law applies to the interpretation of the policy at issue.

**1.  Burden of Proof and Contract Interpretation**

In general, the insured bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage.  See Trinity Universal Ins. Co. v. Empl'rs Mut. Cas. Co., 592 F.3d 687, 691-92 (5th Cir. 2010)(applying Texas law); Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co., 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied); Tex. Ins. Code Ann. § 554.002.  If the insurer is successful, the burden shifts back to the insured to prove that an exception to the exclusion applies.  Guar. Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998)(applying Texas law).

Under Texas law, insurance policies are subject to the rules of contract interpretation.  Progressive County Mut. Ins. Co. v. Sink, 107 S.W.3d 547, 551 (Tex. 2003).  In construing the terms of a contract, the court's primary purpose is always to ascertain the true intent of the parties as expressed in the written instrument.  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995).  To this end, the court reads all

13

provisions within the contract as a whole and gives effect to each term so that no part of the agreement is left without meaning.  MCI Telecomms. Corp v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999); see also Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003).  "Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning."  Bituminous Cas. Corp. v. Maxey, 110 S.W.3d 203, 208-09 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

When a contract as worded can be given "a definite or certain legal meaning," then it is unambiguous as a matter of law, and the court enforces it as written.  CBI Indus., 907 S.W.2d at 520; see also Fiess v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006).  The court will not find a contract ambiguous merely because the parties advance conflicting interpretations.  Fiess, 202 S.W.3d at 746.  If, however, the court finds the exclusion to be ambiguous, the court must construe it in favor of the insured as long as that construction is not unreasonable.  Id.  The court must adopt the interpretation of the exclusion that is offered by the insured, if it is not unreasonable, even if the interpretation offered by the insurer is more reasonable.  Trinity Universal Ins. Co., 592 F.3d at 692 (quoting Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004)); Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex.

1991)).

**2. Duty to Defend**

In Texas, an insurer's duty to defend is a separate and distinct duty from its duty to indemnify. <u>Trinity Universal Ins. Co.</u>, 592 F.3d at 691. Under the "eight-corners" rule, an insurer's duty to defend its insured arises if the complaint in the suit against the insured alleges facts that potentially support claims for which there is coverage. <u>Lincoln Gen. Ins. Co. v. Reyna</u>, 401 F.3d 347, 350 (5th Cir. 2005)(applying Texas law); <u>see also</u> <u>Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.</u>, 279 S.W.3d 650, 654 (Tex. 2009). In determining whether this duty exists, the court's only job is to compare the four corners of the pleading with the four corners of the insurance policy. <u>Reyna</u>, 401 F.3d at 350; <u>see also</u> <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 141 (Tex. 1997).

"Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination . . . ." <u>GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church</u>, 197 S.W.3d 305, 308 (Tex. 2006). The Supreme Court of Texas, in dicta, favorably cited a Fifth Circuit Court of Appeals decision in which the federal court predicted that Texas' highest court would recognize an exception to the eight-corners rule only "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue

15

of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." Id. at 308-09 (quoting Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 531 (5th Cir. 2004)).

When applying the eight-corners rule, the court considers the factual allegations without regard to their truth or falsity. See Trinity Universal Ins. Co., 592 F.3d at 691; Fielder Rd. Baptist Church, 197 S.W.3d at 310. Only the facts alleged, not the legal theories asserted, are relevant. Reyna, 401 F.3d at 350. The court interprets the allegations liberally and resolves all doubts regarding the duty to defend in favor of the insured. Trinity Universal Ins. Co., 592 F.3d at 691; Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141. However, the court may not "read facts into the pleadings," "look outside the pleadings, or imagine factual scenarios which might trigger coverage." Pine Oak Builders, Inc., 279 S.W.3d at 655 (quoting Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 142).

An insurer is required to defend its insured against suit as long as the allegations potentially give rise to at least one claim covered by the insurance policy, regardless of the number of claims potentially not covered. Utica Nat'l Ins. Co. of Tex., 141 S.W.3d at 201 ("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy."). Even when "the complaint does not

16

state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." <u>Trinity Universal Ins. Co.</u>, 592 F.3d at 691 (quoting <u>Zurich Am. Ins. Co. v. Nokia, Inc.</u>, 268 S.W.3d 487, 490-91 (Tex. 2008)).

### III.  Analysis

Sigma Marble moved for partial summary judgment in its favor holding that Amerisure breached its duty to defend Sigma Marble in the arbitration proceeding.  Sigma Marble contends that the arbitration claim that the vanities and showers were not properly installed implicates negligently performed work by Sigma Marble and that the claim of delays and operational costs trigger loss of use coverage under the policy definition of property damage.

Amerisure counters that: 1) the arbitration claim alleges only economic damages, which are not recognized under Texas law as property damage and, thus, are not covered by the policy; 2) the arbitration claim does not allege an "occurrence" causing "property damage;" 3) even if it did, exclusions apply; 4) extra-contractual damages are not available in the third-party context and, even if they were, Sigma Marble is not entitled to extra-contractual damages because, at most, a bona fide dispute existed between insured and insurer; and 5) Sigma Marble is not entitled to attorneys' fees because it should not prevail on its claims and

because it failed to properly segregate the fees sought.[47]

Before progressing through Amerisure's arguments, the court finds it necessary to address two preliminary issues. First, the court emphasizes that the statement of claim against Sigma Marble in the underlying arbitration is a third-party action, which means that Constructors passed Transformation's allegations on to Sigma Marble and the other third-parties. Constructors alleged, "To the extent that the alleged claims asserted by Transformation arise out of or are based on the work performed by each of the Third[-]Party Respondents, or any alleged untimeliness of the performance of such work, the Third[-]Party Respondents are each responsible . . . ."[48] In other words, the only relief that Constructors sought was based entirely on the allegations of Transformation. Thus, the court's comparison of the policy to the allegations in the underlying action consists of twelve rather than eight corners as the court must review the statements of claim by both Constructors and Transformation.

Another issue that takes precedence over Amerisure's specific arguments is its general assertion that the underlying pleading

---

[47]     Amerisure also argues that the claim does not fit within the policy endorsement for repair and rework.  See Amerisure's Mot. for Summ. J., Docket Entry No. 12, pp. 23-24 (citing to Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. A, Amerisure 00177-181, Texas Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement).  Sigma Marble agrees that the endorsement does not apply.  See Sigma Marble's Resp. Opposing Amerisure's Mot. for Summ. J., Docket Entry No. 16, pp. 9-10.

[48]     Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. C, Sigma000114, Constructors' Statement of Claim Against Third-Party Respondents, p. 4.

does not involve Sigma Marble's tile and stone work at all. Amerisure contends that Sigma Marble's "scope of work did not include the vanities and showers, and it certainly did not include the placement of those items."[49]

Constructors hired Sigma Marble to perform all of the tile and stone work in the renovation, which included work in the guest bathrooms on the floors, walls, thresholds, and granite tops. Transformation's claim against Constructors alleged cost increases and completion delays due to "unilaterally" relocating vanities and showers in twenty-four suites because of incorrect installations. Transformation's claim is asserted against Constructors not any subcontractor individually responsible for the alleged defective work.  Thus, the claim does not identify who was responsible for the unilateral decision or the incorrect installations.

The court need not read anything into the claim, however, to see that it potentially involved the work of Sigma Marble, particularly with regard to the vanities.[50]  The reverse cannot be said; in other words, one cannot read the claim and be certain that it did not implicate Sigma Marble's work.  Texas law requires that the court resolve all doubts in favor of the insured and that an

---

[49]   Amerisure's Reply to Sigma Marble's Resp. to Amerisure's Mot. for Summ. J., Docket Entry No. 18, p. 2.

[50]   Sigma Marble worked on the "granite tops" in the guest bathrooms. One need not resort to the dictionary to know that the granite tops must be part of the bathroom vanities.  Amerisure does not suggest any other type of granite top that may have been incorporated into the bathroom design.

insurer defend as long as the allegations *potentially* give rise to a covered claim.  <u>Fielder Rd. Baptist Church</u>, 197 S.W.3d at 310 ("A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend . . . ."); <u>see also</u> <u>Trinity Universal Ins. Co.</u>, 592 F.3d at 691; <u>Utica Nat'l Ins. Co. of Tex.</u>, 141 S.W.3d at 201.  Thus, even though the claim does not state sufficient facts to determine with certainty that Sigma Marble's work was called in question, the court follows the general rule requiring Amerisure to provide a defense when a claim potentially is covered.  <u>See</u> <u>Trinity Universal Ins. Co.</u>, 592 F.3d at 691.

### A.  <u>Economic Loss</u>

The crux of Amerisure's argument on economic loss is its assertion that Texas law does not recognize damages that are economic in nature as "property damage" covered by insurance policies.  Amerisure argues that Transformation's claims of "delays, disorganization, numerous change orders and poor sequencing [that] resulted in significant budget shortfalls, lost profits, and additional labor costs" assert only damages that are "economic in nature."[51]  Sigma Marble disagrees, accusing Amerisure of relying on outdated and inapposite case law.

The Supreme Court of Texas ("Court" or "Texas Supreme Court") found occasion to disentangle the economic loss rule from

---

[51]     Amerisure's Mot. for Summ. J., Docket Entry No. 12, pp. 10-11.

insurance-policy interpretation in 2007 when the United States Court of Appeal for the Fifth Circuit ("Fifth Circuit") certified the following three questions:

1. When a homebuyer sues his general contractor for construction defects and alleges only damage to or loss of use of the home itself, do such allegations allege an "accident" or "occurrence" sufficient to trigger the duty to defend or indemnify under a CGL policy?

2. When a homebuyer sues his general contractor for construction defects and alleges only damage to or loss of use of the home itself, do such allegations allege "property damage" sufficient to trigger the duty to defend or indemnify under a CGL policy?

3. If the answers to certified questions 1 and 2 are answered in the affirmative, does Article 21.55 of the Texas Insurance Code apply to a CGL insurer's breach of the duty to defend?

Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 4 (Tex. 2007). The Court answered all three questions in the affirmative.

The most significant portion of the opinion as it relates to the issue of economic loss came in the Court's discussion of the first two questions. The Court explained why the economic-loss rule has no application in the interpretation of insurance contracts:

The economic-loss rule, however, is not a useful tool for determining insurance coverage. The rule generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract. Its focus is on determining whether the injury is to the subject of the contract itself. In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's

negligence.    It  is  a  liability  defense  or  remedies
doctrine, not a test for insurance coverage.

Id. at 12-13 (citations omitted).  The Court pointed out that the

CGL policy made no distinction between tort and contract damages:

> The insuring agreement does not mention torts, contracts,
> or  economic  losses;  nor  do  these  terms  appear  in  the
> definitions of "property damage" or "occurrence."   The
> CGL's  insuring  agreement  simply  asks  whether  "property
> damage"  has  been  caused  by  an  "occurrence."    Therefore,
> any  preconceived  notion  that  a  CGL  policy  is  only  for
> tort   liability   must   yield   to   the   policy's   actual
> language.   The duty to defend must be determine here, as
> in  other  insurance  cases,  by  comparing  the  complaint's
> factual allegations to the policy's actual language.

Id. at 13 (citations and footnotes omitted).

Amerisure  points  the  court  to  a  May  2010  district  court

decision, Bldg. Specialties, Inc. v. Liberty Mut. Fire Ins. Co.,

712 F. Supp.2d 628 (S.D. Tex. 2010).   The court agrees that the

case is helpful but not for the reasons advanced by Amerisure.   In

fact, Amerisure's assertion that the court "disagreed with Sigma's

proposition that Lamar Homes rewrote almost 100 years of Texas law"

that held "'economic damage' is not 'property damage'" is flat

wrong.[52]   The  case  actually  disassociated  "economic  damage"  from

"property damage:"

> This  result  is  not  based  on  the  economic-loss  rule
> rejected as a rule for "property damage" in Lamar Homes.
> That rule precludes a tort recovery for economic loss
> arising out of a breach of contract.   Lamar Homes, 242
> S.W.3d at 12.   The distinction in this case is made not
> between tort and contract damages but rather on the basis

---

[52]    See Amerisure's Reply to Sigma Marble's Resp. to Amerisure's Mot. for
Summ. J., Docket Entry No. 18, p. 1.

> of whether there has been "physical damage" to "tangible
> property," regardless of the underlying theories of
> liability or ownership of the property.

Bldg. Specialties, Inc., 712 F. Supp.2d at 645 n.1.

This court finds the Lamar Homes, Inc. case to leave no doubt that the "proper inquiry is whether an 'occurrence' has caused 'property damage'" as those terms are defined within the policy and not the nature of the asserted damages.  See Lamar Homes, Inc., 242 S.W.3d at 16.  Given the recent, authoritative holding in Lamar Homes, Inc., Amerisure's reliance on contradictory case law that predates Lamar Homes, Inc. is misplaced.[53]  In light of the current state of Texas law, Amerisure simply cannot prevail on its economic-loss argument regardless of the tenacity with which it repeatedly makes it.  As directed by the Texas Supreme Court in Lamar Homes, Inc., the court turns to the policy's actual language.

---

[53]    Amerisure cites five cases, one federal and four state, for the proposition that, under Texas law, "damages that are only economic in nature are not covered by a policy insuring 'property damage.'"  Amerisure's Mot. for Summ. J., Docket Entry No. 12, p. 10 (citing Gibson & Assocs., Inc. v. Home Ins. Co., 966 F. Supp. 468, 474 (N.D. Tex. 1997)(stating that Texas law "does not recognize economic damages as coming within the definition of 'property damages' contained in standard liability insurance policies."); Great Am. Lloyds Ins. Co. v. Mittlestadt, 109 S.W.3d 784, 787-88 (Tex. App.—Fort Worth 2003, no pet.)(stating that "Texas courts have repeatedly held that economic losses do not constitute 'property damage' within the meaning of a general liability policy"); State Farm Lloyds Ins. Co. v. Kessler, 932 S.W.2d 732, 737 (Tex. App.—Forth Worth 1996, writ denied)(stating that "[i]n Texas, economic damages are not property damages as defined by liability insurance policies"); Terra Int'l, Inc. v. Commonwealth Lloyds Ins. Co.; 829 S.W.2d 270, 273 (Tex. App.—Dallas 1992, writ denied)(finding that allegations that insured's negligence rendered plaintiff's property "essentially worthless" did not state potential liability for property damage within policy coverage); Houston Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d 153, 156 (Tex. App.—Houston [1st Dist.] 1990, writ denied)(holding that "the plain meaning of the insurance contract phrase, 'the loss of use of tangible property,' does not include economic loss").  Regardless of the details of those opinions, current Texas Supreme Court case law does not support Amerisure's conclusion that economic damages are never covered under a CGL policy.

**B.   "Occurrence" and "Property Damage"**

Amerisure contends that the arbitration claims did not allege either an "occurrence" or "property damage" within the meaning of the policy.  The reasoning is: The arbitration statement of claim contains no allegation "that Sigma Marble's defective construction was the product of negligence" as required by the definition of occurrence and no allegation of physical injury or loss of use as required by the definition of property damage.[54]  Sigma Marble disagrees both that an assertion of negligence is required by the policy and that the statements of claim lack an allegation of loss of use.

### 1.   Occurrence

In Lamar Homes, Inc., the Texas Supreme Court held that allegations of unintended construction defects or faulty workmanship that injure only the work of the insured may constitute an 'occurrence' under a CGL policy.  Lamar Homes, Inc., 242 S.W.3d at 4-5, 7.  The relevant insurance policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id. at 6.

The Court noted that the policy did not define "accident" but concluded that the ordinary meaning encompassed a deliberate act, performed negligently, such that the result was not intended and would have been different given correct performance.  Id. at 8.

---

[54]     Amerisure's Mot. for Summ. J., Docket Entry No. 12, pp. 12-14.

"Thus, a claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury . . . or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." <u>Id.</u> at 9.  To determine whether faulty workmanship was accidental, the Court looked to the underlying allegations.  <u>See</u> <u>id.</u>

The policy before this court contains an identical definition for "occurrence."  Looking to the allegations in the underlying arbitration, the court finds no allegation that Sigma Marble intended or expected its work to cause Transformation's damage. <u>Cf.</u> <u>id.</u> (noting that "no one allege[d]" that the contractor intended its work to damage the underlying plaintiff's home). Rather, Transformation claimed that the contractor committed a number of construction errors, at least one of which potentially involved Sigma Marble's tile and related work.  The specific allegation implicating Sigma Marble's work complained of the relocation of vanities and showers in many suites because of "incorrect installations that compromised the bathroom design and created expensive completion costs."[55]  The court has no difficulty understanding "incorrect installations" in that context as asserting negligent performance even though the word "negligence"

---

[55]   Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. B, Transformation's Am. Statement of Arbitration Claim, Sigma000104, Construction Errors.

itself did not appear in this phrase of the statement of claim.

The court notes that Transformation employed variations of the term "negligence" in discussing Constructors' performance of other duties not relate directly to Sigma Marble's work.[56] Transformation also accused Constructors of fraudulent conduct apparently unrelated to Sigma Marble's performance of work.  Importantly, the duty to defend is triggered if any claim is potentially covered, regardless of whether most claims fall outside the realm of coverage.  See Utica Nat'l Ins. Co. of Tex., 141 S.W.3d at 201. The court finds that the claim against Sigma Marble constituted an "occurrence" and turns to the next question whether it also asserted "property damage" under the policy.

### 2.  Property Damage

The "property damage" portion of Lamar Homes, Inc. also focused on the policy definition of the term, which was "[p]hysical injury to tangible property, including all resulting loss of use of that property."  Lamar Homes, Inc., 242 S.W.3d at 10.  There, the issue concerned physical injury.  See id.  The Court disagreed with the federal district court's determination that physical injury to the homebuilder's own work cannot be property damage.  Id. Although the Court acknowledged that repair or replacement of the insured's own defective work is often not covered by CGL policies,

---

[56]    See, e.g., Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. B, Sigma000005, Sigma000006, Sigma000010, Transformation's Amended Statement of Arbitration Claim, pp. 5, 6, 10.

the Court stated that the reason is not because faulty workmanship can never fit within the definition of property damage but because the specific act or damage does not otherwise fit within coverage or does fit within an exclusion.  See id.

In the case before this court, coverage was afforded for "physical injury to tangible property" including loss of use and "[l]oss of use of tangible property that is not physically injured."[57]  Amerisure contends that no loss of use was pled stating, "Indeed, Constructors never had 'use' of the hotel at issue because it was merely a contractor."[58]  From this statement, the court discerns that Amerisure incorrectly dismissed Transformation's allegations of loss of use of the hotel as irrelevant.

Transformation's statement of claim alleged that it suffered more than $4,000,000 in consequential damages due to project delays.  The majority of those damages were attributable to the hotel remaining closed for business beyond the original completion date and included the cost of the staff that had been hired to begin after the originally scheduled completion date and loss of revenue from sales and event cancellations.  Transformation alleged that the delay was due, at least in part, to correcting the installations of vanities and showers.  Therefore, loss-of-use

---

[57]     Amerisure's Mot. for Summ. J., Docket Entry No. 12, Ex. A, Amerisure 00171-72, CGL Coverage Form, pp. 14-15.

[58]     Amerisure's Mot. for Summ. J., Docket Entry No. 12, p. 14.

damages were pled and the property-damage requirement was met.[59]

B. **Exclusions**

The business-risk exclusions, which generally are incorporated in CGL policies, preclude coverage for defective construction that damages the insured's work. See <u>Nokia, Inc.</u>, 268 S.W.3d at 500; <u>Lennar Corp. v. Great Am. Ins. Co.</u>, 200 S.W.3d 651, 667-68, 670 (Tex. App.—Houston [14[th] Dist.] 2006, pet. denied). Exclusion k (addressing damage to the insured's product) and Exclusion l (addressing damage to the insured's work) in the present policy fit that model. Exclusion k avoids coverage when the property damage is to the insured's product only, and, like the exclusion discussed in <u>Lennar Corp.</u>, Exclusion l avoids coverage for "property damage [only] to the insured's work arising after a construction project is finished and in the owner's possession." <u>Lennar Corp.</u>, 200 S.W.3d at 670 (internal quotation marks omitted)(construing an exclusion identical to Exclusion l of the present policy).

Here, Sigma Marble's product was the stone and tile, and its work was the installation of the stone and tile. By definition, both terms also include warranties and other representations regarding Sigma Marble's product or work. According to the policy terms, then, damages for the repair or replacement of defective tile or stone or for the repair or replacement of defective

_____

[59]   Because the loss-of-use damages presented at least one potentially covered claim, the court need not discuss Amerisure's other arguments regarding property damage. <u>Cf.</u> <u>Utica Nat'l Ins. Co. of Tex.</u>, 141 S.W.3d at 201 (requiring an insurer to defend if the facts alleged would give rise to any covered claim).

installation of tile or stone is excluded from coverage.  To the extent that such damages were asserted by Transformation, they were not covered; however, these provisions did not exclude damages for loss of use.  Cf. Wilshire Ins. Co. v. RJT Constr., LLC, 581 F.3d 222, 226 (5th Cir. 2009)(applying Texas law and holding an identical "your work" exclusion precluded coverage for the expenses related to repairing and replacing the insured's foundation work but not damage to other property resulting from the defective work).  At least a portion of the damages alleged against Sigma Marble, as detailed above, related to loss of use.  As in RJT Constr., LLC, the business-risk exclusions may apply to some but not all of the claims against Sigma Marble.  Thus, Amerisure cannot avoid its duty to defend on that basis.  See Utica Nat'l Ins. Co. of Tex., 141 S.W.3d at 201.

In its response to Sigma Marble's motion, Amerisure asserts for the first time in this lawsuit that Exclusion m, which concerns damage to impaired property or property not physically injured, also applies to preclude coverage.  Sigma Marble argues that Exclusion m is not properly before this court because Amerisure did not plead it as an affirmative defense and did not argue it in its motion for summary judgment.

To be sure, exclusions from a policy of liability insurance are affirmative defenses that must be pled timely.  Ingraham v. United States, 808 F.2d 1075, 1078 (5th Cir. 1987); see also Fed.

R. Civ. P. 8(c) (listing eighteen specific affirmative defenses and including "any avoidance or affirmative defense").  The pleading of all affirmative defenses is a technical requirement that precludes consideration of those that are pled late except in the absence of unfair surprise.  See Ingraham, 808 F.2d at 1079.

Amerisure mentioned Exclusion m in passing in both its reservation-of-rights letter and its denial-of-coverage letter in the context of the repair and rework endorsement.  In both letters, Amerisure opined that the arbitration claim did not trigger the endorsement, stating that the endorsement modified the policy to allow limited coverage otherwise excluded by Exclusions l and m but did not apply to the claims against Sigma Marble.  Neither letter advances Exclusion m as a reason on its own for the denial of a defense.

Exclusion m also did not appear in Amerisure's original answer, which contained no affirmative defenses, or its proposed amended answer, which listed several other exclusions as affirmative defenses.  The proposed amended answer mentioned the repair and rework endorsement without any reference to Exclusion m. Two days after requesting leave to amend, Amerisure filed the pending motion for summary judgment, which also is silent about Exclusion m.  When Amerisure filed its response to Sigma Marble's dispositive motion, the motion for leave to amend its answer remained pending; yet, Amerisure did not seek the court's approval

to add Exclusion m as a defense in the amended answer. Interestingly, because Amerisure raised Exclusion m in its response to Sigma Marble's motion rather than in its own motion, Amerisure did not seek summary judgment in its favor on that basis but only to avoid summary judgment against it.

In its reply, Sigma Marble pointed out that Exclusion m was not properly before the court, but Amerisure still took no action. In fact, Amerisure filed its reply a day later and argued in favor of application, despite its late pleading, of exclusions for "damage to your work" (Exclusion k) and "damage to your product" (Exclusion l). Amerisure did not discuss Exclusion m even though its proposed amended answer remained pending. The court granted Amerisure's motion for leave to amend several days later. Amerisure filed, as it should have, the proposed amended answer as its live pleading, still without mention of Exclusion m.

Whether Sigma Marble is truly surprised that Amerisure raised Exclusion m is hard to say, but Amerisure's delay in mentioning it until it responded to Sigma Marble's motion for summary judgment is unfair. If Exclusion m were one of the grounds on which Amerisure based its reservation-of-rights and subsequent denial decisions, Amerisure has no excuse for failing to include it in its proposed amended answer and its motion for summary judgment. Amerisure's actions are the very type of ambush that the federal rules seek to preclude. Cf. Ingraham, 808 F.2d at 1079. ("A defendant should not

31

be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."). The court finds no reason in this case to deviate from the procedural requirement that all affirmative defenses must be pled. Exclusion m is not properly before the court.

### D. **Extra-contractual Damages and Attorneys' Fees**

Amerisure also sought decisions in its favor on extra-contractual damages and attorneys' fees. Sigma Marble's summary judgment motion focused only on the duty to defend. The court finds that, in light of the court's decision on duty to defend, the parties are in the better position to attempt to resolve the remaining disputes on their own. Pursuant to its authority under Federal Rule of Civil Procedure ("Rule") 16 and the court's inherent power to manage its own affairs to achieve the orderly and expeditious disposition of cases, the court has determined that this case is appropriate for referral to mediation.

Mediation is a mandatory but nonbinding settlement conference in which the parties attempt to resolve their differences with the assistance of a third party mediator. All mediation proceedings are confidential and privileged from discovery. No subpoena, summons, or other process shall be served at or near the location of any mediation session, upon any person entering, leaving, or attending any mediation session.

Counsel and parties shall proceed in good faith to resolve

this case through mediation.  Each party must be represented by a principal, partner, officer, or official with authority and discretion to negotiate a settlement.  The parties shall make independent arrangements for payment of fees for mediation.  The costs of mediation are to be divided and borne equally by the parties unless otherwise agreed and ordered.

Following the mediation, the mediator will advise the court if the case settled.  No other information concerning the mediation may be given to the court by the mediator or any other party.

The parties have fourteen days to inform the court of the name of an agreed mediator.  If the parties are unable to agree on a mediator, they each must submit three names to the court and the court will designate a mediator.  **Mediation must be completed by January 31, 2011**.

If the case does not settle at mediation, the parties shall appear for a Rule 16 conference before the undersigned judge on Wednesday, February 2, 2011, at 10:00 a.m.

### IV.  Conclusion

Based on the foregoing, the court **GRANTS** Sigma Marble's motion and **DENIES** Amerisure's motion.

**SIGNED** in Houston, Texas, this <u>28th</u>  day of December, 2010.

Nancy K. Johnson
United States Magistrate Judge